## IN THE UNITED STATES DISTRICT COURT

## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Tracie E. Thackara, | CASE NO. 1:14-cv-00158-GBC |
| Plaintiff, | (MAGISTRATE JUDGE COHN) |
| v. | MEMORANDUM |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | Docs. 1, 4, 5, 6, 9, 11 |

## <u>MEMORANDUM</u>

### I.      Procedural Background

On June 13, 2008, Tracie E. Thackara ("Plaintiff") protectively filed an application as a claimant for supplemental security income, with an alleged disability onset of March 26, 1998.  (Administrative Transcript, hereinafter, "Tr." at 11 (Doc. 5)).  On August 26, 2011, Plaintiff's claim was denied at the initial level of administrative review.  (Tr. 11).  At Plaintiff's request, on August 27, 2012, an administrative law judge ("ALJ") held a hearing at which Plaintiff, who was represented by an attorney, and a vocational expert appeared and testified.

(Tr. 337-387).  On October 17, 2012, the ALJ found that Plaintiff was not disabled and not entitled to benefits.  (Tr. 8-24).  On October 26, 2012, Plaintiff filed a request for review with the Appeals Council (Tr. 7), which the Appeals Council denied on November 29, 2013, thereby affirming the decision of the ALJ as the "final decision" of the Commissioner.  (Tr. 4-6).

On January 30, 2014, Plaintiff filed the above-captioned action pursuant to 42 U.S.C. § 405(g) and pursuant to 42 U.S.C. § 1383(c)(3), to appeal a decision of the Commissioner of the Social Security Administration denying social security benefits.  Doc. 1.  On May 20, 2014, the Commissioner ("Defendant") filed an answer and an administrative transcript of proceedings.  Doc. 4, 5.  On June 30, 2014, Plaintiff filed a brief in support of the appeal ("Pl. Brief").  Doc. 6.  On August 11, 2014, Defendant filed a brief in response ("Def. Brief").  Doc. 9.  On November 5, 2014, the Court referred this case to the undersigned Magistrate Judge.  On December 12, 2014, Plaintiff filed a letter notifying the Court that a reply brief would not be filed.  Doc. 12.

///

///

## II. Relevant Facts in the Record

Plaintiff was born on June 24, 1972, and thus was classified by the regulations as a younger person through the date of the ALJ decision on October 17, 2012.  Pl. Brief at 1; 20 C.F.R. § 404.1563(c).  Plaintiff graduated from high school (Tr. 125, 342) and completed beautician school (Tr. 281).  Plaintiff alleges that she became disabled in 1998 at the age of twenty-five, but she continued to work until 2008.  (Tr. 110, 281, 342-43; Pl. Br. at 1).  Plaintiff owned and operated a candle business, hand-pouring candles and selling them at craft shows.  (Tr. 343).  She also has past relevant work experience as a waitress.  (Tr. 344).

Plaintiff lives with her husband, who receives disability benefits, and her disabled, adult son.  (Tr. 128, 243, 346).  Plaintiff alleges that she experienced a number of symptoms, including chronic pain, in her shoulders, neck, upper and lower back and right arm.  Pl. Brief at 2.  According to Plaintiff, she has been in two car accidents, the latest occurring in May of 2008 and, over time; her physical symptoms caused her to become depressed and anxious.  Pl. Brief at 2.  Plaintiff asserts that her symptoms cause her not to be able to focus on anything.  Pl. Brief at 2.

**A. Relevant Treatment History and Medical Opinions**

**1. Dr. Laura Siems, M.D., Treating Physician**

Dr. Siems treated Plaintiff from approximately February 2010 through January 2012.  (Tr. 195-225, 267-78, 304-24).  During 2010 and 2011, Plaintiff visited Dr. Siems six times for regular checkups and pharmacological adjustments.  (Tr. 195-96, 201-02, 207-08, 217-18, 268-69, 308-11).  On June 30, 2010, Plaintiff reported neck pain and numbness in her right upper extremity and jaw line.  (Tr. 217-18).  Plaintiff did not report any mental symptoms, and Dr. Siems observed Plaintiff to be fully alert and oriented with normal affect.  (Tr. 218).

Dr. Siems referred Plaintiff to neurologist, Laurence Primack.  (Tr. 217).  On October 11, 2010, Dr. Siems opined that Plaintiff's depression was "well controlled on [her] current [medications]."  (Tr. 207-208).  On December 2, 2011, Plaintiff reported an increase in depression, memory problems, and fatigue.  (Tr. 308).

///

///

///

### 2.  Dr. Laurence Primack, M.D., Neurologist

On August 3, 2010, Dr. Primack observed that Plaintiff was oriented and that she exhibited intact language abilities, fund of knowledge, memory, and ability to maintain attention.  (Tr. 176).

### 3.  Jane E. Rowe. D.O.

On July 26, 2011, while treating for a rash, Dr. Rowe observed Plaintiff to be well developed, well nourished, and fully alert and oriented.  (Tr. 264).  Dr. Rowe also noted that Plaintiff showed no signs of depression, anxiety, or agitation. (Tr. 264).

### 4.  Jennifer Hartey, Psy.D., Consultative Examiner

In an examination report from Dr. Hartey dated June 3, 2011, Plaintiff denied any suicidal or homicidal ideation, intent, or plan.  (Tr. 243).  She denied any history of hallucinations or delusions.  (Tr. 243).  Plaintiff indicated that she has a few good friends, but they do not live near her.  (Tr. 243).  Dr. Hartey noted that Plaintiff was alert and fully oriented, showed no signs of a formal thought disorder, and appeared to be a generally good historian.  (Tr. 243).

Considering Plaintiff's ability to engage in the interview without any significant difficulty, Dr. Hartey noted Plaintiff's attention was intact and her responses suggested adequate comprehension. (Tr. 243). Plaintiff's concentration was mostly intact, only making one minor error when completing serial sevens. (Tr. 243). Dr. Hartey diagnosed Plaintiff with Major Depressive Disorder and assigned a Global Assessment of Functioning (GAF) score of 50.[1] (Tr. 243-44).

Dr. Hartey opined that Plaintiff had none to only slight limitations in her ability to understand, remember, and carry out short, simple instructions and make simple work-related decisions. (Tr. 240). Further, Plaintiff had only slight

---

[1] *Schwartz v. Colvin*, 3:12-CV-01070, 2014 WL 257846 at *5, n. 15 (M.D. Pa. Jan. 23, 2014) ("The GAF score allows a clinician to indicate his judgment of a person's overall psychological, social and occupational functioning, in order to assess the person's mental health illness. *Diagnostic and Statistical Manual of Mental Disorders* 3–32 (4th ed.1994). A GAF score is set within a particular range if either the symptom severity or the level of functioning falls within that range. *Id.* The score is useful in planning treatment and predicting outcomes. *Id.* The GAF rating is the single value that best reflects the individual's overall functioning at the time of examination. The rating, however, has two components: (1) symptom severity and (2) social and occupational functioning. The GAF is within a particular range if *either* the symptom severity *or* the social and occupational level of functioning falls within that range. When the individual's symptom severity and functioning level are discordant, the GAF rating reflects the *worse* of the two. . . . . A GAF score of 31–40 represents some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking or mood. *Id.* A GAF score of 41–50 indicates serious symptoms or any serious impairment in social, occupational or school functioning. *Id.* A GAF score of 51 to 60 represents moderate symptoms or any moderate difficulty in social, occupational, or school functioning. *Id.*").

limitations in her ability to interact appropriately with the public, supervisors, and co-workers. (Tr. 240).

### 5. Michael Murray, M.D., Consultative Examiner

In the examination report dated August 10, 2011, Dr. Murray observed that Plaintiff arrived to the appointment using a cane, but used the cane inconsistently. (Tr. 282). For example, Plaintiff carried a cane, but rarely put it to the floor when walking down the hall. (Tr. 282). Plaintiff did not use the cane to move around the room during the interview. (Tr. 282). Consequently, Dr. Murray opined that the cane was used for the purpose of attempting to augment her present illness. (Tr. 282).

Upon examination, Plaintiff reported pain with movement of her neck and limitation in range of motion "ROM." (Tr. 282). However, Dr. Murray documented that when Plaintiff was distracted she exhibited a greater ROM and could turn fully to look behind her. (Tr. 282). He also observed that throughout the interview, Plaintiff was very animated and would move her neck frequently as she talked. (Tr. 282). Dr. Murray also found that Plaintiff maintained good eye

contact throughout the interview; she appeared to be talkative and people oriented; and she lacked symptoms of depression.  (Tr. 282).

### 6.  Emanuel Schnepp, Ph.D., Non-Examining Psychologist

On June 24, 2011, Dr. Schnepp reviewed the evidence of record and concluded that Plaintiff could perform simple, routine, repetitive work in a stable environment; she could understand, retain, and follow simple job instructions; she could be expected to complete a normal workday without exacerbation of psychological symptoms; and she could sustain an ordinary routine without special supervision.  (Tr. 246-249).

### III.   Legal Standards and Review of ALJ Decision

To receive disability or supplemental security benefits, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); *accord* 42 U.S.C. § 1382c(a)(3)(A).  A claimant for disability benefits must show that he or she has a physical or mental impairment of such a severity that:

> [H]e is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A); 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step evaluation process to determine if a person is eligible for disability benefits.  20 C.F.R. § 404.1520; *accord Plummer*, 186 F.3d at 428.  If the Commissioner finds that a Plaintiff is disabled or not disabled at any point in the sequence, review does not proceed.  20 C.F.R. § 404.1520(a)(4).  The Commissioner must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant's impairment prevents the claimant from doing past relevant work; and (5) whether the claimant's impairment prevents the claimant from doing any other work.  20 C.F.R. §§ 404.1520, 416.920.  Before moving on to step four in this process, the ALJ must also determine Plaintiff's residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).

The disability determination involves shifting burdens of proof. The claimant bears the burden of proof at steps one through four. *See Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). If the claimant satisfies this burden, then the Commissioner must show at step five that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform. *Id.* The ultimate burden of proving disability within the meaning of the Act lies with the plaintiff. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 416.912(a).

When reviewing the Commissioner's decision denying a claim for disability benefits, the Court must uphold the findings of the Commissioner so long as those findings are supported by substantial evidence. *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008). Substantial evidence is a deferential standard of review. *See Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004). Substantial evidence "does not mean a large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pierce v. Underwood*, 487 U.S. 552, 564 (1988) (quoting *Consolidated Edison Co. v.*

*N.L.R.B.*, 305 U.S. 197, 229 (1938)).   Substantial evidence requires only 'more than a mere scintilla' of evidence, *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999) (quoting *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995)), and may be less than a preponderance.   *Jones*, 364 F.3d at 503.   If a reasonable mind might accept the relevant evidence as adequate to support a conclusion reached by the Commissioner, then the Commissioner's determination is supported by substantial evidence.   *Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999); *Johnson*, 529 F.3d at 200.

## A. Significance of Global Assessment Functioning ("GAF") Score in ALJ's Determination[2]

---

[2] It is unclear whether Plaintiff requests the Court to engage in an overarching review to determine whether the ALJ's decision is supported by substantial evidence.  The Court will address Plaintiff's arguments to the extent that it can discern them.  The Court reminds Plaintiff that Local Rule 83.40.4(b) requires that in social security cases, a Plaintiff's brief "shall set forth . . . the specific errors committed at the administrative level which entitle plaintiff to relief." M.D. Pa. Local Rule 83.40.1.  Local Rule 83.40.4(b) elaborates that "[a] general argument that the findings of the administrative law judge are not supported by substantial evidence is not sufficient."   *Id.*; *cf. Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231-32 (3d Cir. 2008) (explaining that Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a 'showing,' rather than a blanket assertion, of entitlement to relief and, as a threshold requirement, the plain statement of pleadings must possess enough heft to show that the pleader is entitled to relief). Failure to adequately raise an issue results in its waiver.  *See Kiewit Eastern Co., Inc. v. L & R Construction Co., Inc.,* 44 F.3d 1194, 1203–04 (3d Cir.1995) (upholding a district court's finding that a party had waived an issue when a party only made vague references to the issue).

Plaintiff argues that the ALJ erred by "discount[ing] the importance or validity of the GAF determination while reiterating the portions of [Dr. Hartey's] report that support[ed] his finding."  Pl. Brief at 2.  Plaintiff states that "Dr. Hartey assessed her Global Assessment Functioning at 50, which would indicate serious symptomatology and/or serious impairment in social, occupational or school functioning."  Pl. Brief at 2.  Plaintiff argues that in the decision, ALJ's offered "a suggested explanation as to why the GAF score may be so low, but the opinion is not based on Dr. Hartey's opinion or even her report."  Pl. Brief at 2-3.

To the extent that Plaintiff argues that the ALJ did not afford proper weight to the GAF score of 50, such argument is unpersuasive.  GAF scores are not afforded any unique status in that they must expressly be discussed and analyzed in all cases; rather the Court must look at the overall context.[3]  *See Pendergast v.*

---

[3] The Court notes that "[d]ue to concerns about subjectivity in application and a lack of clarity in the symptoms to be analyzed, the [American Psychiatric Association] abandoned the GAF score in its recently published fifth edition of the Diagnostic and Statistical Manual [of Mental Disorders] ("DSM–5")."  *Solock ex rel. F.A.R.P. v. Astrue*, No. 1:12-CV-1118, 2014 WL 2738632, at *6 (M.D. Pa. June 17, 2014) (citing Am. Psychiatric Assoc., *Diagnostic and Statistical Manual of Mental Disorders 5d*, 16 (2013)).  "It was recommended that the GAF be dropped from DSM–5 for several reasons, including its conceptual lack of clarity . . . and questionable psychometrics in routine practice."  *See* Am. Psychiatric Ass'n, Diagnostic and

*Colvin*, No. 2:13CV933, 2014 WL 4680730, at *8 (W.D. Pa. Sept. 19, 2014). In *Gilroy v. Astrue*, the Third Circuit held that remand was not required where the ALJ did not reference a GAF score of 45 assigned by the treating psychiatrist where the ALJ did refer to observations from the psychiatrist's reports and where the psychiatrist did not explain the basis for the GAF score. *See Gilroy v. Astrue*, 351 F. App'x 714, 715-16 (3d Cir. 2009). Moreover, because "the GAF scale does not directly correlate to the severity requirements in the mental disorders listings, a GAF score should be considered with all of the evidence but it is not dispositive." *Galvin v. Comm'r of Soc. Sec.*, No. CIV.A.08-1317, 2009 WL 2177216, at *1 n.5 (W.D. Pa. July 22, 2009); *see also* 66 Fed. Reg. 50764–5 (2000).

Plaintiff also argues that the ALJ erred by not adopting every finding within the Dr. Hartey's opinion in its entirety, specifically, the GAF score. Pl. Brief at 2-3. As mentioned above, GAF scores are not dispositive and the ALJ is not bound

---

Stat. Manual of Mental Disorders, DSM–516 (5th ed. 2013). In response, the Social Security Administration now allows ALJs to use GAF ratings as opinion evidence when assessing disability claims involving mental disorders; however, a "GAF score is never dispositive of impairment severity," and thus an ALJ should not "give controlling weight to a GAF from a treating source unless it is well supported and not inconsistent with other evidence." SSA AM-13066 at 5 (July 13, 2013).

by Dr. Hartey's GAF score.  Additionally, the ALJ is entitled generally to credit parts of an opinion without crediting the entire opinion. *See Lee v. Comm'r Soc. Sec.*, 248 F. App'x 458, 461 (3d Cir. 2007) (Upholding the findings of the ALJ where the ALJ had afforded "great weight" to the opinions of treating physicians, but did not "fully credit" them where there were treatment gaps in their records that undermined Plaintiff's claimed severity); *Carter v. Comm'r of Soc. Sec.*, 511 F. App'x 204, 205-06 (3d Cir. 2013) (Upholding the findings of the ALJ where the ALJ afforded treating physician "great weight" but discounted statement that claimant was unable to work where progress notes failed to lend support for that statement).

The Court finds that the ALJ sufficiently addressed Plaintiff's GAF score in totality with the remaining medical evidence of record, thus the ALJ's conclusion is supported by substantial evidence.

## B. Duty to Develop

Plaintiff requests that the Court remand the case for "additional development of the mental complaint of the Plaintiff's claim and/or for further evaluation,

testing and/or explanation by Dr. Hartey." Pl. Brief at 3.

The Third Circuit has yet to formally impose a broad duty upon the ALJ to investigate and develop arguments for all parties. *See N.J. Media Group v. Ashcroft*, 308 F.3d 198,223 (3d Cir.2002); *Burnett v. Comm'r of Social Sec. Admin.*, 220 F.3d 112,120 n. 2 (3d Cir.2000); *Poleck v. Astrue*, No. CIV.A. 09-291, 2009 WL 3738602, at *2-3 (E.D. Pa. Nov. 9, 2009). "While an ALJ is required to assist the claimant in developing a full record, he or she has no such obligation to 'make a case' for every claimant." *Kenyon v. Colvin*, 2013 WL 6628057 (M.D. Pa. 2013). The burden still "lies with the claimant to develop the record regarding his or her disability because the claimant is in a better position to provide information about his or her own medical condition." *Money v. Barnhart*, 91 F. App'x 210, 215 (3d Cir. 2004) (*citing Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and 20 C.F.R. §§ 404.1512(a) and 416.912(a)). One of the regulations describing the duties of the ALJ states, in part, that the ALJ:

> shall inquire fully into the matters at issue and shall receive in evidence the testimony of witnesses and any documents which are *relevant and material* to such matters. If the Administrative Law

> Judge believes that there is *relevant and material evidence* available which has not been presented at the hearing, the Administrative Law Judge may adjourn the hearing or, at any time prior to the mailing of notice of the decision, reopen the hearing for the receipt of such evidence.

20 C.F.R. § 410.640 (emphasis added).  The Court notes that section 410.640 requires the ALJ to seek relevant and material evidence.  20 C.F.R. § 410.640.  In this instance, Plaintiff does not specify what relevant and material evidence is lacking that cannot already be discerned from the record.

With regards to Plaintiff's argument that the ALJ should "recontact" pursuant to 20 C.F.R. § 404.1520b, section 404.1520b provides:

> (c) If the evidence is consistent but we have insufficient evidence to determine whether you are disabled, or if after weighing the evidence we determine we cannot reach a conclusion about whether you are disabled, we will determine the best way to resolve the inconsistency or insufficiency. The action(s) we take will depend on the nature of the inconsistency or insufficiency. We will try to resolve the inconsistency or insufficiency by taking any one or more of the actions listed [below]. . . .
> > (1) We may recontact your treating physician, psychologist, or other medical source. . . .

20 C.F.R. § 404.1520b.  In the Third Circuit, the amount of deference a reviewing court should afford to an ALJ's decisions regarding the development of an

adequate factual record in the Social Security context, e.g., whether to "recontact" any medical provider because the present record is "inadequate," is an open question. *Compare Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 204-05 (3d Cir. 2008) (noting the "important prerequisite" that "recontact will proceed if 'the evidence we receive from your treating physician or psychologist or other medical source is inadequate for us to determine whether you are disabled,'" but not opining on the question of deference) *and Masbeth v. Comm'r of Soc. Sec.*, No. 06-6076, 2008 WL 2637415, at *8 (D. N.J. June 27, 2008) ("because the ALJ did not find the reports . . . to be inadequate to make a determination, . . . the ALJ was not required to recontact these physicians under 20 C.F.R. §§ 404.1512(e).") *with Gray v. Astrue*, 2:10-CV-507, 2012 WL 1521259, at *3-4 (E.D. Pa. May 1, 2012).

Ultimately, the question turns on whether there is substantial evidence to support the ALJ's finding.  As long as there is "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'" there is not a requirement for the ALJ to search for more evidence.  *See Pierce v. Underwood*, 487 U.S. 552, 564 (1988) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

Plaintiff does not explain how the evidence from the medical sources was inadequate, other than argue for the Court to reweigh the evidence in Plaintiff's favor. Based on the foregoing, Plaintiff's duty to develop argument fails.

## IV. Conclusion

Therefore, the Court finds that the ALJ made the required specific findings of fact in determining whether Plaintiff met the criteria for disability, and the findings were supported by substantial evidence. 42 U.S.C. §§ 405(g), 1382c; *Brown*, 845 F.2d at 1213; *Johnson*, 529 F.3d at 200; *Pierce*, 487 U.S. at 552; *Hartranft*, 181 F.3d at 360; *Plummer*, 186 F.3d at 427; *Jones*, 364 F.3d at 503. Substantial evidence is less than a preponderance of the evidence, but more than a mere scintilla of evidence. It does not mean a large or significant amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Thus, if a reasonable mind might accept the relevant evidence as adequate to support the conclusion reached by the Acting Commissioner, then the Acting Commissioner's determination is supported by substantial evidence and stands.

*Monsour Med. Ctr.*, 806 F.2d at 1190. Here, a reasonable mind might accept the relevant evidence as adequate. Accordingly, the Court will affirm the decision of the Commissioner pursuant to 42 U.S.C. § 405(g).

An appropriate Order in accordance with this Memorandum will follow.


Dated: March 23, 2015                    _____s/Gerald B. Cohn_____
                                         GERALD B. COHN
                                         UNITED STATES MAGISTRATE JUDGE